UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

THOSE CERTAIN UNDERWRITERS AT      )
LLOYD'S, LONDON, SUBSCRIBING TO    )
POLICIES PGIARK07130-00 AND        )
PGIXS00546-00,                     )
                                   )
            Plaintiff,             )
                                   )
      v.                           )      Case No. 1:19-cv-00252
                                   )
DVO, INC. and DAIRY ENERGY, INC.,  )
                                   )
            Defendants.            )

**OPINION AND ORDER GRANTING DEFENDANT DVO, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFF'S
MOTION TO DISMISS DVO, INC.'S COUNTERCLAIM FOR BREACH OF THE
IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
(Docs. 34, 41)

Plaintiff, Those Certain Underwriters at Lloyd's, London, subscribing to policies
PGIARK07130-00 ("Policy 7130") and PGIXS00546-00 ("Policy 546") (collectively, the
"Policies"), brings this action against Defendants DVO, Inc. ("DVO") and Dairy Energy,
Inc. ("Dairy Energy" and collectively, "Defendants") seeking a declaratory judgment
regarding its duties to defend and indemnify DVO in an underlying action between DVO
and Dairy Energy, captioned *Dairy Energy, Inc. v. DVO, Inc.*, Case No. CL18002382-00
(Va. Cir. Ct.) (the "Underlying Action").

DVO is the insured under Policy 7130, which is the Primary Policy, as well as
Policy 546, which is an Excess Policy. Policy 7130 contains a Professional Liability
Policy (the "7130 Professional Liability Policy") and a Commercial General Liability
Policy (the "7130 Commercial General Liability Policy"). Policy 546 affords excess
coverage subject to the same terms and conditions set forth in the 7130 Professional
Liability Policy and the 7130 Commercial General Liability Policy. For purposes of the

pending motions, the parties agree that only the 7130 Professional Liability Policy is at issue.[1]

In its Complaint, Plaintiff asserts that it is not required to defend or indemnify DVO under the 7130 Professional Liability Policy and that, to the extent that the Underlying Action would otherwise trigger coverage, several exclusions apply. In response, DVO counterclaims for a declaratory judgment that the 7130 Professional Liability Policy gives rise to a duty to defend the Underlying Action because it concerns "professional services" and no exclusions apply. DVO further alleges that Plaintiff breached the express terms of the Policies and the implied covenant of good faith and fair dealing by disclaiming coverage and commencing this action.

Dairy Energy's counterclaim seeks a declaratory judgment that mirrors DVO's requests. In addition, Dairy Energy argues that, to the extent that Dairy Energy recovers from DVO in the Underlying Action, Dairy Energy would be entitled to satisfaction of its judgment against DVO pursuant to the 546 Policy.

On September 3, 2019, DVO moved for partial summary judgment pursuant to Fed. R. Civ. P. 56, seeking dismissal of Plaintiff's Complaint, a declaration that Plaintiff must defend DVO in the Underlying Action pursuant to the terms of the 7130 Professional Liability Policy, and reimbursement for attorneys' fees and costs incurred in connection with this action. (Doc. 34.) Plaintiff opposed the motion and cross-moved for summary judgment requesting a declaration that Plaintiff is not required to defend or indemnify DVO. (Doc. 41.) In addition, Plaintiff moved to dismiss DVO's claim for breach of the implied covenant of good faith and fair dealing under Fed. R. Civ. P. 12(b)(6). DVO and Dairy Energy opposed Plaintiff's cross-motion on November 12, 2019. On November 26, 2019, the court took the pending motions under advisement.

Plaintiff is represented by Dan D. Kohane, Esq., Michael Kotula, Esq., and Steven

---

[1] *See Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 779 N.E.2d 167, 172 (N.Y. 2002) (holding that because insurer had a duty to defend defamation claim under one policy provision, "it consequently has a duty to defend the entire action brought under any of the [insurer's] policies" and thus "it is unnecessary for us to discuss the [other] policies").

E. Peiper, Esq. DVO and Dairy Energy are represented by Charles E. Graney, Esq., and Steven R. Hamlin, Esq. Dairy Energy is also represented by David M. Knapp, Esq., and Kevin T. Merriman, Esq.

## I.   The Factual Record.

### A.   Whether the Contested Exhibits Are Admissible.

The parties contest whether two exhibits, identified as DVO's Exhibit 2-C (an email from a DVO employee transmitting a claim under the 7130 Professional Liability Policy) and Plaintiff's Exhibit G (a policy statement from the American Society of Civil Engineers ("ASCE")) are properly before the court. A party may support a factual assertion made in a motion for summary judgment by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). Even if the cited materials are not themselves admissible at trial, the court may consider "the content or substance of otherwise inadmissible materials where 'the party submitting the evidence show[s] that it will be possible to put the information . . . into an admissible form.'" *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538 (4th Cir. 2015) (alterations in original) (quoting 11 James Wm. Moore et al., *Moore's Fed. Practice* § 56.91[2] (3d ed. 2015)); *see also Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (holding "the material may be presented in a form that would not, in itself, be admissible at trial.") (citation and internal quotation marks omitted).

Pursuant to Fed. R. Civ. P. 56(c)(2), the opposing party may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *Id.* An opposing party waives its objections if the contested materials "were attached as exhibits to [its] Rule 56.1 Statement and were a part of [its] moving papers." *Capobianco v. City of N.Y.*, 422 F.3d 47, 55 (2d Cir. 2005) (citing 10A Charles Alan Wright et al., *Fed. Practice & Procedure* § 2722, at 384-85 (3d ed. 1998)).

Plaintiff contests the admissibility of DVO's Exhibit 2-C, a February 20, 2018

email from Corey Brickl, a DVO employee, to a representative from Premier Claims Management, LLC, because it is not authenticated through an affidavit or deposition testimony by a person with personal knowledge of its contents, which purportedly renders it inadmissible hearsay. Exhibit 2-C includes as attachments a project proposal for a digester signed on January 27, 2010 by Stephen W. Dvorak as President of GHD, Inc. (DVO was formerly named GHD, Inc.) and Kyle T. Van Der Hyde of Dairy Energy as well as a February 12, 2018 letter from Dairy Energy's counsel providing notice of a claim against DVO. Because Plaintiff included portions of these exhibits in both its Complaint and its motion for summary judgment, it has waived any objection to them. *See Capobianco*, 422 F.3d at 55 (holding defendants waived objections to the admissibility of documents cited in their statement of facts and briefs).

Even in the absence of waiver, "[t]he bar for authentication of evidence is not particularly high" and "'is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007) (quoting Fed. R. Evid. 901(a)). The email and project proposal are authored by a DVO employee and the claim letter was sent by counsel for Dairy Energy, and thus both documents are likely to be easily authenticated at trial. *See Gordon v. New England Cent. R.R., Inc.*, 2019 WL 5084160, at *2 (D. Vt. Oct. 10, 2019) (considering unauthenticated exhibits on summary judgment when the defendant "identified either the creator of each exhibit or a person with knowledge of the document's creation who will properly authenticate the document at trial"); *Hinterberger v. Catholic Health Sys.*, 299 F.R.D. 22, 38 (W.D.N.Y. 2014) (holding Rule 56(c) "simply provides that the evidence must be capable of presentation in admissible form at the time of trial; it does not require that the materials be presented in an admissible form on summary judgment"). Exhibit 2-C is therefore properly before the court.

DVO, in turn, challenges the admissibility of Plaintiff's Exhibit G, the ASCE policy statement regarding warranty and guarantee clauses for professional engineering service contracts, on the grounds that "Plaintiff may not rely on documents extrinsic to Dairy Energy's complaint" to avoid its duty to defend. (Doc. 43 at 10.) A policy

4

statement is not relevant to the duty to defend unless it is attached to, incorporated within, or integral to the Complaint in the Underlying Action. *See Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 1448 (2d Cir. 2004) ("[T]he general rule in determining whether an insurer has a duty to defend is to compare the allegations of the complaint with the operative insurance policy."). Because the Complaint in the Underlying Action includes no reference to the ASCE policy statement, Exhibit G is not properly before the court.[2]

## B.   Whether the Court May Consider Statements of Fact Without Record Citations.

Both Plaintiff and DVO rely on factual assertions unsupported by record citations. For example, Plaintiff asserts, without record evidence, that the "Court in the Underlying Action denied DVO's plea in bar because of fact issues concerning the alleged ten-year design warranty in the Dairy-DVO contract. But for the alleged ten-year design warranty, the Underlying Action would have been dismissed already." (Doc. 41-9 at 26, ¶ 12.) DVO, in turn, asserts that the digester project at issue in the Underlying Action "was not approved by the State USDA Rural Development program official, a condition precedent to the [Standard Form of Agreement and Standard General Conditions'] effectiveness under [S]ection 9.06." (Doc. 34-6 at 19-20.)

Under Fed. R. Civ. P. 56(c)(1), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" through either a citation to the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* The Local Rules for the Western District of New York require that each statement of undisputed fact:

> be followed by citation to admissible evidence or to evidence that can be presented in admissible form at trial as required by Fed. R. Civ. P. 56(c)(1)(A). Citations shall identify with specificity the relevant page and paragraph or line number of the evidence cited. Failure to submit such a

---

[2] DVO does not request judicial notice of the ASCE policy statement, and the court declines to take it *sua sponte* as the ASCE policy does not impact the duty to defend.

statement may constitute grounds for denial of the motion.

W.D.N.Y. L.R. 56(a)(1).

Without a record citation, Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002). The court thus disregards any facts unsupported by a record citation. *See Deanda v. Hicks*, 137 F. Supp. 3d 543, 564 (S.D.N.Y. 2015) ("[I]f a party fails to properly support a statement by an adequate citation to the record, the Court may properly disregard that assertion.") (citation omitted).

### C.    The Undisputed Facts.

#### 1.    Dairy Energy's Complaint in the Underlying Action.

On December 14, 2018, Dairy Energy, a Virginia corporation, commenced the Underlying Action against DVO, a Wisconsin corporation, in the Virginia Circuit Court of the County of Pittsylvania, alleging that DVO contracted to design and construct for Dairy Energy an Anaerobic Digester System (the "Digester") to be used to process and convert animal waste into electrical energy and commercially useful by-products. DVO allegedly "designed and delivered" the Digester to Dairy Energy in approximately January of 2011, and the Digester operated "until its catastrophic failure" on November 20, 2017. (Doc. 34-2 at 20, ¶ 4.) Dairy Energy contends the Digester was damaged by:

> . . . DVO's faulty design, which included a mechanism for injecting oxygen into the Digester as part of its normal operations without addressing the sulfuric acid that such oxygen injection would generate within the Digester. The consequent generation of sulfuric acid caused by the faulty design caused the concrete slabs of the [D]igester roof, and concrete walls and related parts within the Digester, to weaken and fail, resulting in the collapse of the Digester's roof.

*Id.* at 21, ¶ 6.

Dairy Energy asserts that the terms of the agreement between it and DVO are contained in two documents attached as Exhibit A to Dairy Energy's Complaint, which are titled "Standard Form of Agreement Between Owner and Design/Builder on the Basis of a Stipulated Price" (the "Standard Form of Agreement") and "Standard General

Conditions of the Contract Between Owner and Design/Builder" (the "Standard General Conditions"), respectively. *Id.* at 23, 34. Both documents are form contracts prepared by the "Engineers Joint Contract Documents Committee" and were issued and published jointly by the National Society of Professional Engineers, the American Council of Engineering Companies, and ASCE. *Id.*

Article 9.06 of the Standard Form of Agreement provides that "[t]he [DVO] [D]igester system will have a 3 year warranty on the [D]igester construction and installation and a 10 year warranty on design from the time of [D]igester start-up or within six months from substantial completion." *Id.* at 29. Article 6.20 of the Standard General Conditions, titled "Design/Builder's General Warranty and Guarantee[,]" states:

> A.     Design/Builder warrants and guarantees to Owner that all Construction will be in accordance with the Contract Documents and will not be defective. Design/Builder's warranty and guarantee hereunder excludes defects or damages caused by:
>
>        1.     Abuse, modification or improper maintenance or operation by persons other than Design/Builder, Subcontractors, or Suppliers or any other individual for whom Design/Builder is responsible; or
>
>        2.     Normal wear and tear under normal usage.

*Id.* at 52.

Dairy Energy asserts that its contract with DVO "provides that the Digester has a ten year warranty on its design from the time of the Digester's start up or six months from its substantial completion, both of which occurred on or about January 2011" and that DVO failed to "honor the design warranty[.]" (Doc. 34-2 at 21, ¶¶ 8-9.) Dairy Energy further alleges that DVO "breached its design warranty" to Dairy Energy, which proximately caused damages "in the form of damage to the Digester itself, lost profits, inconvenience, and other economic losses in the amount of at least $3,000,000.00." *Id.* at ¶ 10.

##### 2.    DVO's Answer and Plea in Bar in the Underlying Action.

On January 16, 2019, DVO filed an Answer and a Plea in Bar[3] in the Underlying

Action, wherein DVO sought dismissal of the Underlying Action on statute of limitations

grounds based upon the following assertions:

> 1.    [Dairy Energy] alleges that DVO, Inc. designed and constructed an anaerobic [D]igester system at its fairy farm to be used to convert animal waste into electrical energy and byproducts. Complaint ¶ 2. Plaintiff claims this system was completed in January 2011. Complaint ¶ 3.
>
> 2.    [Dairy Energy] alleges that DVO, Inc. breached design warranties with respect to the [D]igester by failing to properly address sulfuric acid arising from the injection of oxygen into the [D]igester, resulting in the collapse of the [D]igester ceiling. Complaint ¶¶ 6, 10.
>
> 3.    [Dairy Energy] alleges that DVO, Inc. performed its work under a written contract. Complaint ¶ 3. Under Virginia Code section 8.01-246, all claims for breach of contract must be brought within five years of accrual of the cause of action. Virginia Code section 8.01-230 states that the accrual of a cause of action for breach of contract occurs when the breach occurs, not when the damage is discovered. As DVO, Inc. completed work, according to the Complaint, on or before January 2011, any breaches of contractual duties occurred on or before this date. [Dairy Energy] did not file suit until December 14, 2018, after the five year limitations period expired, and thus its cause of action for breach of contract is barred.
>
> 4.    If, on the other hand, [Dairy Energy] alleges that DVO, Inc.'s breach of warranty was not contractual but tort[ious] in nature, [Dairy Energy's] claims are barred by operation of Virginia Code section 8.01-250, which bars tort claims against designers or construction entities arising from improvements to real property occurring more than five years after the completion of services.

(Doc. 41-4 at 2-3, ¶¶ 1-4.)

The Virginia Circuit Court rejected DVO's Plea in Bar on March 12, 2019, in a

---

[3] A plea in bar is a "peremptory plea" that "seeks to defeat the plaintiff's or prosecutor's action completely and permanently." Plea in Bar, Black's Law Dictionary (Westlaw 11th ed. 2019). "A plea in bar asserts a single issue [of fact], which, if proved, creates a bar to a plaintiff's recovery[,]" *Smith v. McLaughlin*, 769 S.E.2d 7, 12 (Va. 2015) (alteration in original) (citation and internal quotation marks omitted), and may be sustained if it "constitutes in itself a complete defense to the bill, or to that part of the bill to which it is pleaded." *Campbell v. Johnson*, 122 S.E.2d 907, 910 (Va. 1961) (citation omitted).

ruling that states in its entirety: "On February 27, 2019 came the parties, by counsel, and argued Defendant's Plea in Bar, and upon consideration of the pleadings, memoranda, and arguments of counsel, and finding it otherwise proper to do so, the Plea in Bar is hereby OVERRULED." (Doc. 43-1 at 2.)

### 3.    Discovery in the Underlying Action.

In the Underlying Action, DVO served interrogatories upon Dairy Energy, to which Dairy Energy responded in April of 2019. In response to Interrogatory 5's request to "[p]lease state all the facts and specify in mechanical detail, each and every defect in the [D]igester, including a description of precisely the manner and means by which the defect alleged[ly] caused such injury[,]" Dairy Energy asserted that the interrogatory "call[ed] for some sort of expert engineering analysis" and that the Digester "was improperly designed to inject oxygen into the [D]igester tank, which caused excessive sulfuric acid to eat through the concrete [D]igester roof, leading to its collapse." (Doc. 34-5 at 11.)

Interrogatory 6 asked Dairy Energy to "state the facts pertaining to" its "contention that [DVO] was negligent or breached implied or express warranties in the design of the [D]igester" as well as to identify relevant witnesses and documents. *Id.* Dairy Energy objected to the interrogatory on the basis that it called for an expert opinion but nonetheless responded as follows:

> After the [D]igester roof collapsed, DVO sent a letter to other digester owners telling them to discontinue injecting oxygen into their systems.
>
> - DVO designed and oversaw construction of the project[.]
> - The Hydrogen Sulfide reduction system, which injected oxygen into the [D]igester, was purchased from, and installed by, DVO[.]
> - No changes were made to the Hydrogen Sulfide reduction system by Dairy Energy[.]
> - There was no discussion or warning given by DVO stating the Hydrogen Sulfide reduction system could lead to failure of the concrete, until after the roof on the structure collapsed.
> - DVO inspected the construction of the [D]igester during each phase of work[.]

- Equipment for the [D]igester was installed by DVO inside installers[.]
- DVO designed the [D]igester roof, ordered and approved the precast for it, and signed off on its construction/installation[.]

*Id.* at 12.

### 4.    The Policies.

DVO is an insured under two Policies issued by Plaintiff, an unincorporated association whose members are each incorporated in the United Kingdom. Policy 7130 provides Commercial General Liability coverage and Professional Liability coverage. Policy 546 "provide[s] the Insured with the Excess Insurance coverage in accordance with the same terms, definitions, conditions, exclusions[,] and limitations as are contained in the Followed Policy(ies) [PGIARK07130-00 and PGIXS00546-00] as set forth in the declaration page." (Doc. 34-4 at 60.) Both Policy 7130 and Policy 546 were in effect for the period April 1, 2017 through April 1, 2018 and contain a retroactive application date of April 1, 1993.

Pursuant to the 7130 Professional Liability Policy, Plaintiff agreed to:

[P]ay on YOUR behalf all DAMAGES that YOU are legally obligated to pay as a result of CLAIMS provided that:

(1)    the CLAIM was first made against YOU during the POLICY PERIOD and reported to US during the POLICY PERIOD or the Extended CLAIMS Reporting Period, if applicable;

(2)    the CLAIM arises out of an actual or alleged WRONGFUL ACT with respect to PROFESSIONAL SERVICES rendered or that should have been rendered by YOU or any entity for whom YOU are legally liable, including your interest in joint ventures;

(3)    the WRONGFUL ACT took place during the POLICY PERIOD or on or after the Retroactive Date and before the expiration of the POLICY PERIOD.

WE shall have the right and duty to assume the adjustment, defense, and settlement of any CLAIM to which this insurance applies. Our duty to adjust, defend[,] and settle all CLAIMS to which this insurance applies ends when the applicable Limits of Liability have been tendered into court or exhausted by payment of CLAIM EXPENSES or DAMAGES.

Notwithstanding the above, this insurance does not apply to CLAIMS, CLAIM[] EXPENSES, or DAMAGES covered, in whole or in part, under any valid insurance policy in force prior to this policy.

(Doc. 34-3 at 67-68.)

The 7130 Professional Liability Policy contains the following definitions:

B.      CLAIM or CLAIMS means any demand received by YOU alleging liability or responsibility on YOUR part for DAMAGES arising from PROFESSIONAL SERVICES.

C.      CLAIM EXPENSES means:

1.      fees charged by an attorney designated by US, or by YOU with OUR written consent, and

2.      all other fees, costs[,] and expenses resulting from the investigation, adjustment, defense of a CLAIM, and the premiums for appeal, attachment[,] or similar bonds;

. . .

D.      DAMAGES means the monetary amounts for which YOU may be held liable, including sums paid as judgments, award, or settlements but does not include:

1.      the restitution, return, withdrawal[,] or reduction of fees, profits[,] or charges for services rendered or offered by YOU or any other consideration or expenses paid to YOU for services or goods; or

2.      judgments or awards deemed uninsurable by law; or

3.      fines and penalties assessed against YOU; or exemplary damages including but not limited to punitive, multiple[,] or treble damages.

. . .

I.      PROFESSIONAL SERVICES means those professional services performed by YOU or on YOUR behalf.

. . .

K.      WRONGFUL ACT means any act, error[,] or omission committed by YOU in the performance of YOUR PROFESSIONAL SERVICES.

*Id.* at 68-69.

The 7130 Professional Liability Policy contains the following exclusions:

11

This insurance does not apply to CLAIMS, CLAIM EXPENSES, or DAMAGES based upon or arising out of:

. . .

H.    any express warranty or guarantee, except that this exclusion shall not apply to a CLAIM where legal liability exists in the absence of such warranty or guarantee and arises from YOUR WRONGFUL ACT or the WRONGFUL ACT of YOUR subconsultants in the rendering of or failure to render PROFESSIONAL SERVICES;

I.    liability of others assumed by YOU under any oral or written contract or agreement, including but not limited to hold harmless and indemnity agreements, agreements to defend others, and liquidated damages clauses, except that this exclusion shall not apply to a CLAIM where legal liability exists in the absence of such contract or agreement and arises from YOUR WRONGFUL ACT or the WRONGFUL ACT of YOUR subconsultants in the rendering of or failure to render PROFESSIONAL SERVICES; [and]

. . .

K.    an actual or alleged WRONGFUL ACT with respect to PROFESSIONAL SERVICES which occurred prior to the inception date of the policy known to any INSURED'S principal, partner, director, officer, agent[,] or employee with responsibility for environmental affairs, legal affairs[,] or risk management and which could reasonably be expected to give rise to a CLAIM.

*Id.* at 69-70.

Under the 7130 Professional Liability Policy's "Choice of Law and Jurisdiction" clause:

If a dispute arises over the meaning, interpretation[,] or operation of any term, condition, definition[,] or provision of this policy, YOU and WE agree that the substantive law of the State of New York shall apply regardless of the choice of law or conflicts of law principles.

*Id.* at 75-76.[4]

### 5.    Communications Regarding Coverage Under the Policies in the Underlying Action.

On February 12, 2018, prior to commencing the Underlying Action, Dairy

---

[4] Dairy Energy states that the choice of law provision cited in Plaintiff's Counterstatement of Undisputed Material Facts is actually derived from a Contract Pollution Policy; however, the 7130 Professional Liability Policy also contains the same choice of law clause.

Energy's counsel sent DVO a letter "with regard to its warranty claim that [arose] from significant damages that [Dairy Energy] has sustained in regards to the failure of the anerobic [D]igester that [DVO] designed and constructed." (Doc. 34-4 at 69.) Dairy Energy asked that DVO forward the letter to its insurance carrier and, "to the extent that the warranty claim of Dairy Energy includes a claim that [DVO's] design breached the standard of care within its profession, we would also ask that you forward this letter to your Errors and Omissions carrier and ask that its representative contact [counsel]." *Id.* Thereafter, DVO forwarded the February 12, 2018 letter and a copy of a January 27, 2010 project proposal for the Digester to Plaintiff via a February 20, 2018 email.

Pursuant to the project proposal, DVO was required to provide specified parts of the "Digester Heating System" and "Gas Mixing System[,]" plumbing and electrical services, "ENGINEERING" services, and "PROJECT MANAGEMENT/PROJECT ADMINISTRATION" services. (Doc. 41-2 at 14.) "Engineering" services are designated as including "Digester Design / PE Stamped Plans[,]" "Heat Calculations / Control System Design[,]" "Gas Collection System[,]" assistance with permit applications, and "System Startup[,]" among other things. *Id.* at 15. Pursuant to the proposal, DVO was not required to provide the concrete floors and walls to contain the Digester, "Spancrete / Cover / Sealant[,]" insulation, or excavation or crane services. *Id.*

In its February 20, 2018 email to Plaintiff, DVO asserted that it "prepared the [D]igester vessel plans and they were then reviewed and stamped by a licensed Virginia Professional Engineer." (Doc. 34-4 at 67.) DVO also "provided and installed the internal heating and mixing system after the [D]igester vessel was constructed by contractors hired directly by Dairy Energy." *Id.* DVO maintained it "was not responsible for the construction of the vessel" and that it "assisted with this [D]igester project but did not actually construct the vessel." *Id.*

On February 26, 2019, Plaintiff sent a letter to DVO in which it stated DVO "has received notice of the failure of an anaerobic [D]igester it designed, constructed[,] and installed on behalf of Dairy Energy[]" which was "a result of the catastrophic breakdown and collapse of the concrete support structure which was constructed under the

13

supervision and direction of DVO." (Doc. 34-2 at 69.) Plaintiff summarized "the sole basis of Dairy Energy's complaint" as alleging that "DVO improperly installed and implemented the [D]igester system which resulted, ultimately, in its failure." *Id.*; *see also id.* at 71 ("Here, the claim is that DVO improperly constructed and designed the [D]igester which resulted in its failure.").

Plaintiff tendered a defense to DVO in the Underlying Action which remains in effect but denied coverage as follows:

> Upon review of your policy, unfortunately, Underwriters have determined that there is no coverage available for this loss. . . . [T]he policy issued to DVO contains several separate and independent coverages. Chief among them[] is the Commercial General Liability coverage form. Importantly, it will not provide protection for losses which arise from DVO's defective workmanship at the jobsite. In addition, the Commercial General Liability coverage form, likewise, does not provide coverage for "property damage" to "your work" and "your product."

> With regard to the instant claim, the sole basis of Dairy Energy's [C]omplaint is that DVO improperly installed and implemented the [D]igester system which resulted, ultimately, in its failure. As the claims for damages all seek demolition, removal[,] and replacement of DVO's defective work product, along with resulting economic damages, it follows that the Commercial General Liability policy will not respond to provide coverage for this particular claim.

> In addition, the Commercial General Liability portion of the policy also includes an exclusion for improper, defective[,] or deficient testing, consultation[,] or advice. Here, to the extent the loss was caused by defective or deficient consultation or advice provided by DVO, the policy would also not respond.

> The policy issued by Underwriters also provides an additional coverage form which protects DVO from claims arising from its Professional Liability. Unfortunately, . . . in order for coverage to be triggered under that portion of the policy, DVO must be able to establish that the loss was caused by a "professional service[.]" Here again, the loss is due to the failure of materials constructed by, or at the direction of, DVO. As the loss is not due to professional services, it follows that there is no coverage under the Professional Liability part of the policy. Even if it was, however, the Professional Liability policy also removes coverage for losses caused by breach of warranty or guarantee. That is the sole claim asserted against DVO, and thus it falls squarely within an exclusion to coverage.

*Id.* at 69-70.

### D.     Whether There Are Disputed Issues of Material Fact.

Although both parties assert that there are disputed issues of material fact, those disputes consist of competing interpretations of the facts and legal theories advanced in the Underlying Action. For example, DVO asserts that Dairy Energy's claims in the Underlying Action "concern DVO's engineering and design of the [D]igester with regard to the presence and management of oxygen within the [D]igester." (Doc. 34-7 at 3, ¶ 8.) In contrast, Plaintiff contends that Dairy Energy "has only one claim against DVO as contained in its complaint" for breach of an express warranty. (Doc. 41-9 at 4, ¶ 8.) The parties further dispute whether Dairy Energy alleges that the Digester's "construction deviated from contract documents" or whether "Dairy Energy alleges that the [D]igester's *design* was defective." *Id.* at 17, ¶ 51 (emphasis in original).

At summary judgment, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" are material to the court's determination. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Under New York law, the interpretation of the 7130 Professional Liability Policy is a question of law. *See High Point Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 93, 97 (2d Cir. 2018) (applying New York law and holding the "interpretation of an insurance agreement is a question of law" appropriate for summary judgment) (citation and internal quotation marks omitted); *Coney Island Auto Parts Unltd., Inc. v. Charter Oak Fire Ins. Co.*, 619 F. App'x 28, 30 (2d Cir. 2015) (holding disputed facts did not "affect the legal question" of whether exclusion to insurance policy applied where "based on undisputed facts in the record, it was triggered in this case"). Because it is the court's role to determine whether the Underlying Action triggers coverage under the 7130 Professional Liability Policy, the parties' opposing interpretations of Dairy Energy's Complaint in the Underlying Action do not give rise to genuine issues of material fact.

DVO's further contention that "it did not execute the purported contract documents" with Dairy Energy, including the Standard Form of Agreement and Standard General Conditions, (Doc. 34-7 at 9, ¶ 50), is supported only by a citation to the unsigned

signature page to the Standard Form of Agreement attached to Dairy Energy's Complaint in the Underlying Action. This creates an issue of fact as to the nature of the contract, if any, between DVO and Dairy Energy; it does not, however, without more control the duty to defend. *See Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985) (noting the "freedom to contract orally remains even if the parties contemplate a writing to evidence their agreement"). Instead, whether summary judgment should be granted turns on the allegations in Dairy Energy's Complaint. *See Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins. Co.*, 690 N.E.2d 866, 868 (N.Y. 1997) ("The duty of an insurer to defend its insured arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage[.]'") (quoting *Fitzpatrick v. Am. Honda Motor Co.*, 575 N.E.2d 90, 93 (N.Y. 1991)). As a result, there are no disputed issues of material fact that preclude summary judgment at least insofar as the duty to defend is concerned.

## II.   Whether to Grant Summary Judgment Regarding Plaintiff's Duty to Defend and Indemnify DVO in the Underlying Action.

### A.   Standard of Review.

The court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson*, 477 U.S. at 248). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). The court "constru[es] the evidence in the light most favorable to the non-moving party" and "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (citations and internal quotation marks omitted).

The moving party always "bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "The fact that both sides have moved for summary judgment does not guarantee that there is no material issue of fact to be tried and that one side or the other is entitled to that relief." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017). Rather, the court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean*, 667 F.2d 305, 314 (2d Cir. 1981)).

"The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

**B.    New York Law Governing the Interpretation of an Insurance Contract.**

"When a federal district court sits in diversity, it generally applies the law of the state in which it[] sits, including that state's choice of law rules." *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313

U.S. 487, 496 (1941)) (footnote omitted). Under New York law, "[a]bsent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000).

The 7130 Professional Liability Policy states that Plaintiff and DVO "agree that the substantive law of the State of New York shall apply regardless of the choice of law or conflicts of law principles" to "a dispute aris[ing] over the meaning, interpretation[,] or operation of any term, condition, definition[,] or provision of this policy[.]" (Doc. 34-3 at 75-76); *see also Boss v. Am. Express Fin. Advisors, Inc.*, 791 N.Y.S.2d 12, 14 (N.Y. App. Div. 2005) (holding contractual choice-of-law clauses are "prima facie valid"). As there is no evidence of fraud or violations of public policy, the court applies New York law.

Under New York law, the "interpretation of an insurance agreement is a question of law" that may be resolved on summary judgment. *High Point Design, LLC*, 911 F.3d at 93 (citation omitted); *see also Wausau Underwriters Ins. Co. v. QBE Ins. Corp.*, 496 F. Supp. 2d 357, 360 (S.D.N.Y. 2007) ("Federal and state courts in New York have recognized that determination of an insurer's duty to defend presents a question of law appropriate for resolution by summary judgment."). In New York, "insurance policies are interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012) (footnote omitted). "[I]f the wording on the duty to defend is clear and unambiguous, it will be enforced according to its terms." *Int'l Bus. Machs. Corp.*, 363 F.3d at 144 (citing *U.S. Fid. & Guar. Co. v. Annunziata*, 492 N.E.2d 1206, 1207 (N.Y. 1986)). "The policy must, of course, be construed in favor of the insured, and ambiguities, if any, are to be resolved in the insured's favor and against the insurer[.]" *U.S. Fid. & Guar. Co.*, 492 N.E.2d at 1207 (citation omitted). In interpreting insurance policies, the court must "construe [them] in a way that affords a fair meaning to *all* of the language employed by the parties in the contract and leaves no provision without force and effect[.]" *Platek v. Town of Hamburg*, 26 N.E.3d 1167, 1171 (N.Y. 2015) (emphasis in original) (citation and internal quotation marks omitted).

It is well established that under New York law, "[a]n insurer's duty to defend its

insured is exceedingly broad." *Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 930 N.E.2d 259, 261 (N.Y. 2010) (citations and internal quotation marks omitted). Accordingly, "[i]f the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend[.]" *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 779 N.E.2d 167, 170 (N.Y. 2002) (citations omitted); *see also Frontier*, 690 N.E.2d at 869 ("If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action[.]") (citation omitted).

"[T]he general rule in determining whether an insurer has a duty to defend is to compare the allegations of the complaint with the operative insurance policy." *Int'l Bus. Machs. Corp.*, 363 F.3d at 148. In making this comparison, "[t]he merits of the complaint are irrelevant and[] [a]n insured's right to be accorded legal representation is a contractual right and consideration upon which his premium is in part predicated. . . . [T]his right exists even if debatable theories are alleged in the pleading against the insured[.]" *Town of Massena*, 779 N.E.2d at 170 (citation and internal quotation marks omitted). As the Second Circuit has explained:

> [T]he New York cases establish that "[s]o long as the claims [asserted against the insured] may rationally be said to fall within policy coverage, *whatever may later prove to be the limits of the insurer's responsibility to pay*, there is no doubt that it is obligated to defend." [] In other words, a separate, contractual duty to defend exists, and perdures until it is determined *with certainty* that the policy does not provide coverage.

*Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (emphasis and alterations in original) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984)).

Courts may declare there is no duty to defend only "if it could be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the insurance policy[.]" *Seaboard Sur. Co.*, 476 N.E.2d at 276 (citation, brackets, and internal quotation marks omitted). At the same time, the court "should not attempt to

impose the duty to defend on an insurer through a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable." *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 166 (2d Cir. 1998) (quoting *Northville Indus. Corp. v. Nat'l Union Fire Ins. Co.*, 679 N.E.2d 1044, 1049 (N.Y. 1997)).

"[I]t is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage[.]" *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 774 N.E.2d 687, 690 (N.Y. 2002). "[A]fter an insurer establishes that a policy exclusion applies, the burden shifts to the policyholder to prove that an exception to that exclusion applies." *Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 122 (2d Cir. 2012); *Platek*, 26 N.E.3d at 1171 ("[W]here the existence of coverage depends entirely on the applicability of an exception to the exclusion, the insured has the duty of demonstrating that it has been satisfied[.]") (alteration, citation, and internal quotation marks omitted).

### C. Whether Plaintiff Has a Duty to Defend DVO in the Underlying Action.

#### 1. Whether Dairy Energy's Complaint in the Underlying Action Alleges Claims Arising out of DVO's "Professional Services."

DVO argues that the engineering services it provided to Dairy Energy fall within the definition of "professional services" in the 7130 Professional Liability Policy, which defines "professional services" as "those professional services performed by YOU or on YOUR behalf." (Doc. 34-3 at 69.) Although Plaintiff has alleged that "poor workmanship" does not constitute "professional services" (Doc. 1 at 13, ¶ 49), it abandons this argument on summary judgment. *See Jackson v. Fed. Express*, 766 F.3d 189, 195-96 (2d Cir. 2014) (holding "a partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims" because "a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others"). Even if Plaintiff had not abandoned this argument, under New York law, an insured performs "professional services" if the services provided involved "'the special acumen and training of professionals when [the insured] engaged in the acts challenged.'"

*Lumbermens Mut. Cas. Co. v. Flow Int'l Corp.*, 844 F. Supp. 2d 286, 300 (N.D.N.Y. 2012) (quoting *Gen. Ins. Co. of Am. v. City of N.Y.*, 2005 WL 3535113, at *5 (S.D.N.Y. Dec. 23, 2005)); *see also Reliance Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 691 N.Y.S.2d 458, 460 (N.Y. App. Div. 1999) (looking to "the nature of the conduct under scrutiny rather than the title or position of those involved" in determining whether professional liability policy afforded coverage) (citation and internal quotation marks omitted). "Engineering activities undoubtedly require specialized knowledge and therefore constitute professional services." *Lumbermens*, 844 F. Supp. 2d at 303.

Because Dairy Energy's Complaint in the Underlying Action alleges claims arising out of DVO's engineering services, including drafting the Digester plans and designing the control system and gas collection system, and because these services require specialized knowledge and engineering acumen, they are "professional services" under the 7130 Professional Liability Policy. *See Lumbermens*, 844 F. Supp. 2d at 302-03 (finding that the insured performed "professional services" in designing a pressurized containment system because the insured designed, manufactured, and installed the system).

## 2.      Whether an Exclusion to the 7130 Professional Liability Policy Applies.

The 7130 Professional Liability Policy affords coverage for DVO's "professional services" so the burden shifts to Plaintiff to demonstrate that an exclusion applies. "The law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to insureds." *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 908 N.E.2d 875, 876 (N.Y. 2009). "Any such exclusions or exceptions from policy coverage must be specific and clear" and "are to be accorded a strict and narrow construction." *Seaboard Sur. Co.*, 476 N.E.2d at 275. In order for a policy exclusion to relieve an insurer of its duty to defend, the insurer:

> bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be

held obligated to indemnify the insured under any policy provision.
*Frontier*, 690 N.E.2d at 868-69.

### a.   Whether the Underlying Action Falls Within Exclusion H to the 7130 Professional Liability Policy.

Plaintiff argues that Dairy Energy's claims in the Underlying Action are excluded from coverage under Exclusion H, which applies to "CLAIMS, CLAIM EXPENSES, or DAMAGES based upon or arising out of: . . . H. any express warranty or guarantee, except that this exclusion shall not apply to a CLAIM where legal liability exists in the absence of such warranty or guarantee[.]" (Doc. 34-3 at 69-70.) "Claims" is defined under the 7130 Professional Liability Policy to mean "any demand received by YOU alleging liability or responsibility on YOUR part for DAMAGES arising from PROFESSIONAL SERVICES." *Id.* at 68. Exclusion H thus excludes coverage for "any demand received" alleging DVO is liable in connection with "professional services . . . based upon or arising out of: . . . H. any express warranty or guarantee" except for any claim "where legal liability exists" in the absence of that express warranty. *Id.* at 68-70; *Platek*, 26 N.E.3d at 1171 (holding the court must give effect "to *all* of the language employed by the parties in the contract and leave[] no provision without force and effect") (emphasis in original and citation omitted); *accord In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1151 (N.Y. 2016).

An "express warranty" is "[a] warranty created by the overt words or actions of the seller." Warranty, Black's Law Dictionary (Westlaw 11th ed. 2019). Under Virginia law, which governs the interpretation of the Standard General Conditions in the Underlying Action,[5] "[e]xpress warranties by the seller are created as follows: (a) Any

---

[5] Section 16.05 of the Standard General Conditions states: "The Contract Documents will be construed in accordance with the law of the place of the Project." (Doc. 34-2 at 65.) According to the project proposal, the Digester is located in Chatham, Virginia. Under New York's choice-of-law provisions, Virginia law thus governs whether the Standard General Conditions give rise to an express warranty in the Underlying Action. *See Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000) ("Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction.").

affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain[.]" Va. Code. § 8.2-313(1). A breach of an express warranty claim "derives from, and is measured by, the terms of that warranty"; therefore, "the 'requirement[s]' imposed by an express warranty claim are not 'imposed under State law,' but rather imposed *by the warrantor*." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992) (alteration and emphasis in original and footnote omitted).

To plead a breach of express warranty claim under Virginia law, a plaintiff must "identify any 'affirmations of fact, promises, descriptions, and/or use of samples and/or models' purportedly made by [the defendant]." *Pulte Home Corp. v. Parex, Inc.*, 579 S.E.2d 188, 190 (Va. 2003) (citing Va. Code. § 8.2-313). A plaintiff may plead the existence of an express warranty by alleging the defendant affirmatively stated a piece of equipment would be "free of defects in design, workmanship[,] and material" but subsequently malfunctioned. *Hubbard v. Dresser, Inc.*, 624 S.E.2d 1, 4 (Va. 2006).

Dairy Energy alleges in the Underlying Action that DVO "contracted with Dairy [Energy] to design and construct" the Digester, that DVO "designed and delivered" the Digester, that the Digester collapsed and became inoperable due to "DVO's faulty design," and that the Digester has "a ten year warranty on its design from the time of the Digester's start up or six months from its substantial completion," which DVO breached. (Doc. 34-2 at 20-21, ¶¶ 2, 4-6, 8, 10.) Dairy Energy thus pleads that DVO expressly warranted the Digester would be free from design defects for a period of ten years from the time of the Digester's startup or six months from its substantial completion and that DVO subsequently breached that express warranty through its faulty design. Dairy Energy's claims in the Underlying Action therefore arise out of an express warranty.

Defendants ask the court to limit the type of express warranty that falls within Exclusion H's embrace so that it only applies where liability is "<u>created</u> by warranty[,]" such as an absolute or unconditional warranty. (Doc. 43 at 7) (emphasis in original). They argue that because legal liability for a design warranty may exist separate and apart from that warranty, the claims in the Underlying Action do not trigger the application of Exclusion H. They further contend that their interpretation of the policy language renders

23

the 7130 Professional Liability Policy ambiguous requiring it to be interpreted in their favor to provide coverage.[6]

Dairy Energy's claims are "based upon or aris[e] out of: . . . *any* express warranty or guarantee[.]" (Doc. 34-3 at 69-70) (emphasis supplied). New York law provides that when "an insurance policy is 'clear and unambiguous,' it is to be given its 'plain and ordinary meaning.'" *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190 (2d Cir. 2010) (quoting *Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88, 90 (2d Cir. 2009); *Olin Corp.*, 704 F.3d at 99 ("Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation.") (citation and quotation marks omitted). Under New York law, "the word 'any' means 'all' or 'every' and imports no limitation[.]" *Kimmel v. State of N.Y.*, 80 N.E.3d 370, 374 (N.Y. 2017) (emphasis and quotation marks omitted) (citing *Zion v. Kurtz*, 405 N.E.2d 681, 686 (N.Y. 1980)).[7] Pursuant to the plain language of Exclusion H, "any" express warranty encompasses "all" express warranties without limitation and does not distinguish between different types of express warranties. *See Mostow v. State Farm Ins. Cos.*, 668 N.E.2d 392, 394 (N.Y. 1996) ("[T]he test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech[.]") (citations omitted). As a result, the Complaint in the Underlying Action clearly alleges a breach of an express

---

[6] DVO further contends that the Underlying Action must not fall within Exclusion H because its contracts with Dairy Energy were drafted in part by ASCE and "[c]learly the ASCE *would not draft or endorse a warranty provision which the ASCE believes would fall outside of professional liability coverage*[.]" (Doc. 43 at 10) (emphasis in original). ASCE is not a party to the 7130 Professional Liability Policy, nor is it a party before the court. Its intent in drafting its standard form contract thus remains a matter of pure speculation. To the extent DVO asserts that it did not sign the Standard Form of Agreement or Standard General Conditions, "[t]he merits of the complaint are irrelevant" in determining whether Plaintiff has a duty to defend. *Town of Massena*, 779 N.E.2d at 170.

[7] Although *Kimmel v. State of New York*, 80 N.E.3d 370, 374 (N.Y. 2017), is not an insurance coverage dispute, the quoted language is not limited to the facts before the court. *See id.* ("We have repeatedly held that 'the word *any* means all or every and *imports no limitation*[.]'") (emphasis in original) (internal quotation marks omitted) (quoting *Zion v. Kurtz*, 405 N.E.2d 681, 686 (N.Y. 1980)).

warranty.

### b.      Whether an Exception to Exclusion H of the 7130 Professional Liability Policy Applies.

Because Plaintiff has demonstrated that Dairy Energy's claims in the Underlying Action fall within Exclusion H to the 7130 Professional Liability Policy, the burden shifts back to DVO "to demonstrate a reasonable interpretation of the underlying complaint potentially bringing the claims within the . . . exception to [E]xclusion [H.]" *Northville Indus.*, 679 N.E.2d at 1048. DVO argues that Dairy Energy's Complaint in the Underlying Action does not identify any specific cause of action and can be reasonably construed to allege claims of negligent design or breach of contract, both of which would fall within the exception to Exclusion H for "a CLAIM where legal liability exists in the absence of such warranty or guarantee[.]" (Doc. 34-3 at 70.) The court agrees.

Under New York law, "[t]he language of the complaint need not state all the facts requisite to establish insurance coverage[:]"

> Where a complaint contains ambiguous or incomplete allegations and does not state facts sufficient to bring a case clearly within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy.

*Commercial Pipe & Supply Corp. v. Allstate Ins. Co.*, 321 N.Y.S.2d 219, 221 (N.Y. App. Div. 1971), *aff'd*, 30 N.Y.2d 619 (N.Y. 1972) (alterations omitted); *see also U.S. Fid. & Guar. Co. v. Exec. Ins. Co.*, 893 F.2d 517, 519 (2d Cir. 1990) ("If the allegations of the complaint are ambiguous or incomplete, the insurer is nevertheless obligated to defend if the case is potentially within the coverage of the policy.") (citation and quotation marks omitted) (applying New York law). In determining whether a claim triggers the duty to defend, the legal theories advanced are "not a barrier to an insured seeking coverage for a defense[.]" *High Point Design, LLC*, 911 F.3d at 96 (finding duty to defend arising out of "advertising injury" even though counterclaim in underlying action did not set forth a claim with that label); *see also Murphy v. Acceptance Indem. Ins. Co.*, 788 F. Supp. 2d 332, 335 (D. Vt. 2011) (holding the "court must focus on the factual allegations of the underlying complaint, and not on the legal theories asserted") (citation and internal

quotation marks omitted) (applying Vermont law).

DVO contends that Dairy Energy's Complaint in the Underlying Action sets forth a tortious design-defect claim arising from DVO's faulty design of the Digester. Because "Virginia has not adopted a strict liability regime for products liability[,] [w]hen alleging that a product suffered from a design defect, a plaintiff may proceed . . . under a theory of negligence." *Evans v. Nacco Materials Handling Grp., Inc.*, 810 S.E.2d 462, 469 (Va. 2018). Under Virginia law, a negligence claim may arise from a failure to exercise "ordinary care to design a product that is reasonably safe for the purpose for which it is intended." *Id.* (quoting *Turner v. Manning, Maxwell & Moore, Inc.*, 217 S.E.2d 863, 868 (1975)). However, "[a]n engineer performing a professional service pursuant to a contract does not also assume an independent tort duty." *McConnell v. Servinsky Eng'g, PLLC*, 22 F. Supp. 3d 610, 616 (W.D. Va. 2014).[8] Rather, "[a]n action for the negligence of a design professional is an action for breach of contract[.]" *William H. Gordon Assocs., Inc. v. Heritage Fellowship, United Church of Christ*, 784 S.E.2d 265, 271 (Va. 2016). The Complaint in the Underlying Action attributes the Digester's collapse to DVO's "faulty design" of the Digester, which DVO drafted pursuant to the Standard Form of Agreement and Standard General Conditions, and thereby arguably alleges a breach of contract claim. (Doc. 34-2 at 21, ¶ 6.)

Under Virginia law, "'the elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.'" *Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 299 (Va. 2016) (quoting *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006)). "Implicit in every contract of

---

[8] Virginia's economic loss rule is likely to prevent recovery in tort. *See, e.g., Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc.*, 152 F.3d 313, 316 (4th Cir. 1998) ("Virginia law is clear that, absent privity of contract, economic losses cannot be recovered in a negligence action.") (collecting cases); *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 264-65 (Va. 2019) ("Under th[e] [economic loss] doctrine, claims for 'damages which were within the contemplation of the parties when framing [an] agreement' — such as economic losses and damage to property that is the subject of the agreement — remain 'the particular province of the law of contracts.'") (quoting *Abi-Najm v. Concord Condo., LLC*, 699 S.E.2d 483 (Va. 2010)).

professional employment is the professional's duty to exercise the care of those ordinarily skilled in the business." *William H. Gordon Assocs., Inc.*, 784 S.E.2d at 274 (noting that an engineer "contracted to design and oversee the construction" of a project and thus "had to satisfy the professional standard of care in both designing the engineering plans and overseeing the construction"); *see also McConnell*, 22 F. Supp. 3d at 616 ("Adherence to professional standards is an implicit term of any contract for services from a professional engineer."). An engineer may breach its professional standard of care if it fails to "develop a design that is clear and constructible, and that is very likely to serve its purpose successfully once in operation." *William H. Gordon Assocs., Inc.*, 784 S.E.2d at 275 (internal quotation marks omitted). Under Virginia law, a breach of contract claim is not necessarily duplicative of a breach of express warranty claim. *See SunTrust Mortg., Inc. v. Old Second Nat'l Bank*, 2012 WL 1656667, at *2 (E.D. Va. May 10, 2012) (holding a breach of contract of indemnification claim and breach of express warranty claim were not duplicative despite reliance on the same set of facts because "the plaintiff has the right to plead alternative theories of recovery based on entirely separate provisions of the Agreement").

In its Complaint in the Underlying Action, Dairy Energy asserts that DVO and Dairy Energy entered into a contract for the design and construction of the Digester, that DVO breached that agreement by designing a Digester that "included a mechanism for injecting oxygen into the Digester as part of its normal operations without addressing the sulfuric acid that such oxygen injection would generate within the Digester[,]" (Doc. 34-2 at 21, ¶ 6), and that this faulty design "caused the concrete slabs of the [D]igester roof . . . to weaken and fail[.]" *Id.* In light of the breadth of the duty to defend, DVO has sustained its burden of proving that Dairy Energy's claims in the Underlying Action "rest on allegations that arguably or potentially bring the [A]ction[] within the protection purchased[,]" pursuant to the exception to Exclusion H of the 7130 Professional Liability Policy. *U.S. Fid. & Guar. Co.*, 893 F.2d at 519 (holding insurance policy gave rise to a duty to defend because "[t]he implicit allegations against [the insured] bring the underlying action within [the] policy coverage"). DVO has thus established Plaintiff's

27

duty to defend the Underlying Action.

**c.      Whether DVO's and Dairy Energy's Judicial Admissions Alter the Duty to Defend.**

Plaintiff argues that the parties' judicial admissions in the Underlying Action and Dairy Energy's admissions in this action indicate that Dairy Energy only raises a claim for breach of an express warranty. The court may consider the parties' "judicial admissions" or "other formal submissions in the current or underlying litigation to confirm or clarify the nature of the underlying claims[.]" *Northville Indus.*, 679 N.E.2d at 1049; *see also Fitzpatrick*, 575 N.E.2d at 95 (ruling the court may consider "underlying facts made known to the insurer [that] create a reasonable possibility that the insured may be held liable for some act or omission covered by the policy") (citation and internal quotation marks omitted); *Northville Indus.*, 679 N.E.2d at 1049 (considering affidavit submitted in support of plaintiff's motion for summary judgment in declaratory action regarding coverage obligations).

On February 12, 2018, Dairy Energy's counsel asked DVO to forward its notice-of-claim letter to DVO's Errors and Omissions carrier acknowledging the potential of claims in addition to a breach of express warranty claim to "include[] a claim that [DVO's] design breached the standard of care within its profession[.]" *See* Doc. 34-4 at 69. Although DVO stated in its Plea in Bar that Dairy Energy alleges DVO "breached design warranties with respect to the [D]igester[,]" (Doc. 41-4 at 2, ¶ 2), DVO's Plea in Bar also raises statute of limitations defenses to breach of contract and tort claims and asserts Dairy Energy's "cause of action for breach of contract is barred." *Id.* at 3, ¶ 3. Correspondingly, DVO's Interrogatory 6 asked Dairy Energy to identify all pertinent facts related to the "contention that the defendant *was negligent* or breached *implied* or express warranties in the design of the [D]igester[.]" (Doc. 34-5 at 11) (emphasis supplied).

In response to Plaintiff's Counterstatement of Undisputed Material Facts asserting that "Dairy[ Energy's] [C]omplaint has only one cause of action against DVO—that DVO has breached its design warranty to Dairy" (Doc. 41-9 at 25, ¶ 5) (internal quotation

28

marks omitted), Dairy Energy "[d]enied that the complaint has 'causes of action' specifically denominated as such" but "[a]dmit[ted] that Dairy Energy has asserted a claim for breach of design warranty against DVO." (Doc. 42-1 at 1.) Although Dairy Energy's admissions can serve to clarify the nature of its claims in the Underlying Action, Dairy Energy's acknowledgment that it asserts a claim for breach of a design warranty is not an admission that forecloses the duty to defend.

Likewise, Plaintiff's proffer of DVO's and Dairy Energy's judicial admissions from this suit do not amount to "sufficient evidence favoring" Plaintiff "for a jury to return a verdict" that the Complaint in the Underlying Action raises only a breach of express warranty claim. *Anderson*, 477 U.S. at 249. To the contrary, Dairy Energy's notice-of-claim letter, DVO's discovery requests, and DVO's Plea in Bar confirm the parties understood Dairy Energy's Complaint in the Underlying Action was ambiguous because it fails to identify specific causes of action and could therefore be read to raise breach of contract and professional negligence theories as "possible factual or legal bas[e]s" on which DVO could be held liable. *Seaboard Sur. Co.*, 476 N.E.2d at 276; *see also High Point Design, LLC*, 911 F.3d at 97 (holding the plaintiff in the underlying action's "discovery demands sought information related to advertisements and are extrinsic evidence that supports interpreting the counterclaim's allegation of 'offering for sale' to include a claim for damages due to advertising"). Judicial admissions in this case and the Underlying Action thus do not alter the duty to defend.

### d.     Whether the Applicable Statute of Limitations Negates the Duty to Defend.

Plaintiff argues that even if the 7130 Professional Liability Policy was otherwise applicable, legal liability cannot exist in the Underlying Action absent an express warranty claim because all other claims are barred by the applicable statute of limitations. Under Va. Code § 8.01-246(2), the statute of limitations for a written contract claim is five years. *Id.* This same statute of limitations also applies to "an action to recover for professional negligence, regardless of whether a claim is framed as a tort." *Lone Mountain Processing, Inc. v. Bowser Morner, Inc.*, 94 F. App'x 149, 156 (4th Cir. 2004)

(applying Virginia law). "The statute of limitations for a design-defect claim based upon a contract commences at the time the defect or condition causing the breach occurs, and not when it is discovered, regardless of the difficulty in ascertaining the existence of the claim." *Id.* at 154 (citing *Va. Military Inst. v. King*, 232 S.E.2d 895, 900 (Va. 1977)).

For negligent design claims, the statute of limitations accrues upon acceptance of the design plans, which often correlates to the date of payment for services. *See id.* at 155 (holding statute of limitations for contractual design-defect claims accrued upon payment to designer because the contract between the parties indicated "payment constituted 'approval and acceptance' of the designs"); *Nelson v. Commonwealth*, 368 S.E.2d 239, 243 (Va. 1988) (holding statute of limitations began to run on design-defect claims upon the defendant's "acceptance of the working drawings" because "the design services offered by [the architect] were severable and not continuous or recurring") (citation and internal quotation marks omitted). According to the Standard Form of Agreement, the Digester was to be substantially completed on or before December 31, 2010, and a final payment was to be made by January 10, 2011. (Doc. 34-2 at 26.) The statute of limitations for any breach of contract and professional negligence claims may have therefore expired prior to Dairy Energy's commencement of the Underlying Action on December 14, 2018.[9]

The duty to defend is "triggered by the allegations contained in the underlying complaint[,]" *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 871 N.E.2d 1128, 1131 (N.Y. 2007), and is not obviated by any potentially successful defenses thereto. *See id.* at 1132 ("An insured's right to representation and the insurer's correlative duty to

---

[9] Contrary to Defendants' arguments, it is not relevant whether Va. Code § 8.01-246(2) is a statute of limitations or repose. Even if the statute of limitations only imposes a procedural bar that does not eliminate Dairy Energy's substantive rights, it still "bars the maintenance of a remedy[.]" *Commonwealth v. Owens-Corning Fiberglas Corp.*, 385 S.E.2d 865, 867 (Va. 1989); *see also* Va. Code § 8.01-246 ("[A]ctions founded upon a contract . . . *shall* be brought within the following number of years next after the cause of action shall have accrued: . . . (2) [i]n actions on any contract that is not otherwise specified and that is in writing and signed by the party to be charged thereby, or by his agent, within five years whether such writing be under seal or not[.]") (emphasis supplied).

defend suits, however groundless, false[,] or fraudulent, are in a sense litigation insurance expressly provided by the insurance contract") (citation and internal quotation marks omitted); *see also Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 945 N.E.2d 1013, 1017-18 (N.Y. 2011) (holding that a duty to defend arises under New York law "without regard to the insured's ultimate likelihood of prevailing on the merits of a claim").[10] Because the statute of limitations is "an affirmative defense that must be pleaded and proved and is waivable[,]" *Perillo v. Dilamarter*, 56 N.Y.S.3d 742, 744 (N.Y. App. Div. 2017) (citation and internal quotation marks omitted), it does not automatically bar a claim for relief. *See Mendez*, 680 N.Y.S.2d at 135-36 (holding defendant waived statute of limitation defense by failing to plead it as an affirmative defense or move to dismiss); *see also Nolan v. Cty. of Erie*, 2020 WL 1969329, at *8 (W.D.N.Y. Apr. 24, 2020) ("'Unless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development.'") (quoting *Foss v. Bear, Stearns & Co.*, 394 F.3d 540, 542 (7th Cir. 2005)).

Under New York law, the duty to defend "perdures until it is determined *with certainty* that the policy does not provide coverage." *Hugo Boss Fashions, Inc.*, 252 F.3d at 620 (emphasis in original); *see also Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 84 (2d Cir. 2006) ("[E]ven if [the insurer's] duty to defend may have ceased, [the insurer] is not relieved of paying for [the insured's] defense up to the point it would have been certain in that proceeding that no further defense was owed under the insurance contract.") (applying New York law). The Virginia Circuit Court overruled DVO's Plea in Bar in the Underlying Action and did not foreclose any of Dairy Energy's claims as a matter of law. Because no claims have not been eliminated "with certainty" from the Underlying Action, the duty to defend remains intact. *Century 21, Inc.*, 442 F.3d at 84 (holding the insurer's duty to defend "endure[d] unless and until there is a point in

---

[10] *See also Int'l Paper Co. v. Cont'l Cas. Co.*, 320 N.E.2d 619, 622 (N.Y. 1974) ("So far as concerns the obligation of the insured to defend the question is not whether the injured party can maintain a cause of action against the insured but whether he can state facts which bring the injury within the coverage. If he states such facts[,] the policy requires the insurer to defend irrespective of the insured's ultimate liability.") (citation and internal quotation marks omitted).

the [underlying] proceeding at which the factual nature of [the underlying plaintiff's] allegation of injury . . . is clarified 'with certainty' to exclude any issue relating to [the insured's] conduct" which would bring the underlying claims within policy coverage) (quoting *Hugo Boss Fashions, Inc.*, 252 F.3d at 620-22).

Because the allegations in Dairy Energy's Complaint in the Underlying Action "are even potentially within the language of the insurance policy," Plaintiff must defend DVO pursuant to the exception to Exclusion H even if a statute of limitations defense may ultimately prove successful. *Town of Massena*, 779 N.E.2d at 170; *see also Seaboard Sur. Co.*, 476 N.E.2d at 275 ("[S]o long as the claims [asserted against the insured] may rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer's responsibility to pay, there is no doubt that it is obligated to defend.").

### e.     Whether the Underlying Action Falls Within Any Remaining Exclusions to the 7130 Professional Liability Policy.

DVO seeks summary judgment on Plaintiff's allegations regarding Exclusions I and K to the 7130 Professional Liability Policy, arguing they must be dismissed as a matter of law because "Plaintiff offers nothing more than threadbare, conclusory, and/or incoherent statements that the exclusions preclude coverage." (Doc. 34-6 at 16.) Plaintiff does not respond to this argument. Even though Plaintiff may be deemed to have abandoned its claims, *see Jackson*, 766 F.3d at 194-95, summary judgment cannot be granted by default. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) (finding error in the district court's grant of summary judgment "solely for failure to file opposing papers" without "assess[ing] whether the defendants had met their burden to demonstrate that summary judgment was appropriate") (footnote omitted).

In the Second Circuit, a district court may "dismiss [claims] for failure to state a cause of action upon [a] motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968); *see also Myers v. Moore*, 326 F.R.D. 50, 59 (S.D.N.Y. 2018) ("Where, as here, defendants argue that they are entitled to summary judgment because a claim is insufficiently pled, courts evaluate the motion under the Rule 12(b)(6) standard.") (collecting cases). However, "a district court should not treat a fully developed motion for summary judgment as a motion to dismiss for failure to state a claim upon which relief may be granted" where, as here, "an answer has been filed and no special circumstances or persuasive reasons justifying contrary action exist[.]" *Ríos-Campbell v. U.S. Dep't of Commerce*, 927 F.3d 21, 26 (1st Cir. 2019).

Exclusion I of the 7130 Professional Liability Policy excludes from coverage "liability of others assumed by [DVO] under any oral or written contract or agreement, including but not limited to hold harmless and indemnity agreements, agreements to defend others, and liquidated damages clauses[.]" (Doc. 34-3 at 70.) In its Complaint, Plaintiff alleges that Exclusion I "appl[ies] to preclude coverage" (Doc. 1 at 13, ¶ 51), but has since acknowledged that Dairy Energy's Complaint in the Underlying Action "does not purport to assert a liability of another assumed by DVO[.]" (Doc. 41-9 at 21, ¶ 62.) The court agrees, finds Exclusion I inapplicable, and therefore GRANTS summary judgment in DVO's favor on this issue.

Exclusion K of the 7130 Professional Liability Policy excludes coverage based upon or arising out of:

> an actual or alleged WRONGFUL ACT with respect to PROFESSIONAL
> SERVICES which occurred prior to the inception date of the policy known
> to any INSURED's principal, partner, director, officer, agent[,] or
> employee with responsibility for environmental affairs, legal affairs[,] or
> risk management and which could reasonably be expected to give rise to a
> CLAIM.

(Doc. 34-3 at 70.) Plaintiff asserts that Dairy Energy's allegations in the Underlying Action "arise out of a loss occurring prior to the inception of" the Policies. (Doc. 1 at 14, ¶ 54.) However, Plaintiff admits that the "Policies contain a retroactive date of April 1,

1993 as respects the [7130] [P]rofessional [L]iability [P]olicy and DVO" (Doc. 41-9 at 7, ¶ 18), and that DVO contracted to design and construct the Digester in 2010 and delivered it to Dairy Energy in 2011, well within the Policies' coverage dates. As a result, the court GRANTS DVO's motion for partial summary judgment with respect to Exclusion K as well.

In summary, because the court cannot conclude "as a matter of law that there is no possible factual or legal basis on which [Plaintiff] might eventually be held to be obligated to indemnify [DVO] under any provision of the insurance polic[ies]," *Seaboard Sur. Co.*, 476 N.E.2d at 276 (citation, brackets, and quotation marks omitted), the court GRANTS DVO's motion for partial summary judgment on its declaratory judgment claim, DISMISSES Plaintiff's allegations in its Complaint regarding its duty to defend, and DECLARES that Plaintiff has a duty to defend DVO in the Underlying Action. Correspondingly, the court DENIES Plaintiff's cross-motion for summary judgment on the duty to defend.

**D.     Whether Plaintiff Has a Duty to Indemnify DVO in the Underlying Action.**

In its motion for summary judgment, Plaintiff seeks a declaration that it has no duty to indemnify DVO in the Underlying Action, although Plaintiff presents no argument or authority in support of that request. An insurer's duty to indemnify is narrower than its duty to defend and is "determined by the actual basis for the insured's liability to a third person[.]" *Frontier*, 690 N.E.2d at 870 (quoting *Servidone Constr. Corp. v. Sec. Ins. Co.*, 477 N.E.2d 441, 444 (N.Y. 1985)). Because Plaintiff's duty to indemnify "hinge[s] on facts which will necessarily be decided in [the] [U]nderlying [A]ction[,]" such as the applicability of statutes of limitations defenses or the binding effect of the alleged contracts between Dairy Energy and DVO, a declaration regarding Plaintiff's duty to indemnify is "premature[.]" *Am. Auto. Ins. Co. v. Sec. Income Planners & Co., LLC*, 847 F. Supp. 2d 454, 465 (E.D.N.Y. 2012) (quoting *Specialty Nat'l Ins. Co. v. English Bros. Funeral Home*, 606 F. Supp. 2d 466, 472 (S.D.N.Y. 2009)) (granting summary judgment regarding duty to defend but denying as to duty to indemnify); *see*

*also Allcity Ins. Co. v. Fisch*, 820 N.Y.S.2d 107, 109 (N.Y. App. Div. 2006) (affirming lower court's holding that insurer had duty to defend but that a declaration regarding the duty to indemnify was premature).

For the reasons stated above, the court DENIES WITHOUT PREJUDICE Plaintiff's cross-motion for summary judgment seeking a declaration that it is not required to indemnify DVO in the Underlying Action and DENIES DVO's motion to dismiss Plaintiff's Complaint to the extent Plaintiff alleges that it does not have a duty to indemnify DVO in the Underlying Action.

**III.    Whether to Dismiss DVO's Breach of the Implied Covenant of Good Faith and Fair Dealing Claim.**

Plaintiff moves to dismiss DVO's claim for breach of the implied covenant of good faith and fair dealing because New York law does not authorize that claim when it is wholly duplicative of a breach of contract claim. Under New York law, "[t]here is an implied covenant of good faith and fair dealing in every contract." *Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp.*, 610 F.3d 44, 54 (2d Cir. 2010); *see also 511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002) ("In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance[.]"). However, "New York law does not treat a breach of the covenant of good faith and fair dealing claim as one that is *separate* from a breach of contract claim where the claims are based on the same facts." *Giller v. Oracle USA, Inc.*, 512 F. App'x 71, 73 (2d Cir. 2013), *cert. denied*, 571 U.S. 1006 (2013) (emphasis in original) (citing *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80-81 (2d Cir. 2002)); *see also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) ("Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract.") (citation and internal quotation marks omitted). For this reason, a "cause of action to recover damages for breach of the implied covenant of good faith and fair dealing cannot be maintained where the alleged breach is 'intrinsically tied to the damages allegedly resulting from a breach of the contract[.]'" *Deer Park Enters., LLC v. Ail Sys., Inc.*, 870

N.Y.S.2d 89, 90 (N.Y. App. Div. 2008).

In the pending case, DVO alleges that Plaintiff "commenced this declaratory judgment action" despite the "clear coverage and duty to defend provided in the Policies" and that this conduct "is a breach of the Policies' express terms" as well as "a breach of the implied covenant of good faith and fair dealing imposed by the Policies." (Doc. 27 at 16, ¶¶ 128-30.) Because the two claims are premised on the same set of facts, they are wholly duplicative and DVO's implied covenant of good faith and fair dealing claim must therefore be dismissed. *See Cruz*, 720 F.3d at 125 (affirming dismissal of breach of implied covenant of good faith and fair dealing claim as "redundant" because it was based on the same facts as breach of contract claim); *Deer Park Enters., LLC*, 870 N.Y.S.2d at 90 (dismissing breach of the implied covenant of good faith and fair dealing claim as duplicative where "the conduct and resulting injury alleged" was "identical" to breach of contract claims).

DVO's effort to recast its claim as one for bad faith does not mandate a different result. A counterclaim "may not be amended by advocating a different theory of liability in an opposition brief wholly unsupported by factual allegations in the complaint." *Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*, 810 F. App'x 17, 2020 WL 1861410, at *3 (2d Cir. Apr. 14, 2020) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)). Even if DVO amended its counterclaim to include a bad-faith claim based on Plaintiff's commencement of this action, it could not prevail because "there is no separate tort for bad faith refusal to comply with an insurance contract" under New York law. *Paterra v. Nationwide Mut. Fire Ins. Co.*, 831 N.Y.S.2d 468, 470 (N.Y. App. Div. 2007)). There is also no bad faith in seeking a court's declaration regarding an insurer's obligations under an insurance contract. Indeed, the New York Court of Appeals has deemed it "sound advice" for "'an insurance company that disclaims in a situation where coverage may be arguable . . . to seek a declaratory judgment concerning the duty to defend or indemnify the purported insured[.]'" *K2 Inv. Grp., LLC v. Am. Guarantee & Liab. Ins. Co.*, 6 N.E.3d 1117, 1120 (N.Y. 2014) (quoting *Lang v. Hanover Ins. Co.*, 820 N.E.2d 855, 858-59 (N.Y. 2004)); *see also Kings Infiniti Inc. v. Zurich Am. Ins. Co.*, 990

N.Y.S.2d 437, 2014 WL 1328274, at *7 (N.Y. Sup. Ct. Apr. 3, 2014) (dismissing breach of implied covenant of good faith and fair dealing claim arising from disclaimer of coverage where plaintiffs alleged "only that they were deprived of the benefits of insurance coverage under the policy and have incurred attorneys' fees and costs in bringing this action").

For the foregoing reasons, the court GRANTS Plaintiff's motion to dismiss DVO's breach of the implied covenant of good faith and fair dealing claim as duplicative of DVO's claim for "breach of the Policies' express terms" (Doc. 27 at 16, ¶ 129) and for failure to state a claim.

## IV.    Whether DVO Is Entitled to Attorneys' Fees and Costs Associated with this Action.

DVO seeks the attorneys' fees and costs it incurred in defending this action because "an insured who is 'cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations,' and who prevails on the merits, may recover attorneys' fees incurred in defending against the insurer's action[.]" *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 822 N.E.2d 777, 780 (N.Y. 2004) (quoting *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 389 N.E.2d 1080, 1085 (N.Y. 1979)). The New York Court of Appeals has held that an insured who "prevails in an action brought by an insurance company seeking a declaratory judgment that it has no duty to defend or indemnify the insured may recover attorneys' fees regardless of whether the insurer provided a defense to the insured." *Id.* This is because "an insurer's duty to defend an insured extends to the defense of any action arising out of the occurrence, including a defense against an insurer's declaratory judgment action[.]" *Id.*

Although DVO has not succeeded on the merits of Plaintiff's claim regarding its duty to indemnify, DVO prevailed on the merits of its declaratory judgment claim regarding Plaintiff's duty to defend. Courts confronted with similar facts have found this to be sufficient to justify an award of attorneys' fees. *See, e.g.*, *Am. Auto. Ins. Co.*, 847 F. Supp. 2d at 466 (awarding attorneys' fees to insured who prevailed on merits of duty to defend despite denying summary judgment on duty to indemnify as premature); *Specialty*

*Nat'l Ins. Co.*, 606 F. Supp. 2d at 473 n.2 (holding insured who prevailed on claim for duty to defend was entitled to attorneys' fees "[e]ven though the [c]ourt . . . dismiss[ed] the action as premature without prejudice to the extent [the insurer] seeks a declaration that [it] has no duty to indemnify [the insured]"). However, because DVO's declaratory judgment action cannot be deemed entirely unsuccessful, attorneys' fees must be apportioned to reflect DVO's partial success. *City Club Hotel*, 822 N.E.2d at 780 (holding an award of attorneys' fees to the insured is warranted if those fees were incurred "as a direct consequence of [the insurer's] unsuccessful attempt to free itself of its policy obligations"). Accordingly, the court GRANTS DVO's motion for attorneys' fees and reasonable costs incurred in filing and briefing the pending motions for summary judgment with regards to Plaintiff's duty to defend. DVO is not, however, entitled to attorneys' fees and costs incurred in defending against Plaintiff's duty to indemnify claim or in advocating in favor of its implied covenant claim. DVO has thirty (30) days from the date of this Opinion and Order to submit evidence under oath of its attorneys' fees and costs apportioned as set forth herein.

## CONCLUSION

For the foregoing reasons, the court GRANTS DVO's motion for partial summary judgment (Doc. 34), DECLARES that Plaintiff has a duty to defend DVO in the Underlying Action, and ORDERS Plaintiff to reimburse DVO for its attorneys' fees and reasonable costs incurred in filing and briefing that part of the pending motions devoted to Plaintiff's duty to defend. The court DENIES Plaintiff's cross-motion for summary judgment with regard to the duty to defend. (Doc. 41.)

The court DENIES WITHOUT PREJUDICE Plaintiff's motion for summary judgment seeking a declaration that it is not required to indemnify DVO in the Underlying Action and DENIES DVO's request for the court to dismiss Plaintiff's allegations concerning its duty to indemnify. The court GRANTS Plaintiff's motion to

dismiss DVO's breach of the implied covenant of good faith and fair dealing claim.

SO ORDERED.

Dated this ___17th___ day of July, 2020.

Christina Reiss, District Judge
United States District Court